**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LARRY WEST,** | : | **Civil No. 1:10-CV-2637** |
| | : | |
| **Plaintiff** | : | |
| | : | **(Judge Jones)** |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| | : | |
| **DAVID VARANO, et al.,** | : | |
| | : | |
| **Defendant.** | : | |

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of the Case

This case, which comes before us for consideration of a motion to dismiss the plaintiff's amended complaint, calls upon us to consider the application of state and federal law to the medical complaints of a state prisoner. The amended complaint, and subsequent motion to dismiss and response, also highlight the importance of clarity when making legal claims in this particular factual context.

The background of this dispute can be simply stated: On August 31, 2012, the plaintiff, Larry West, who was a state inmate, filed an amended complaint in this lawsuit. (Doc. 54.) That amended complaint named David Varano, a non-medical prison supervisor, the Superintendent at the State Correctional Institution (SCI) Coal,

1

as a defendant. (Id.) With respect to defendant Varano, the complain simply cited him for "responsibility for oversight of" medical care and management of the prison. (Id., ¶4.) The complaint also identified two medical supervisory staff, Richard Ellers, the Director of Health Care Service, and Katharine McCarty, the Corrections Health Care Administrator for the Department of Correction, as defendants. As to these defendant, West's amended complaint asserted, with some greater specificity, that the defendants had direct and immediate responsibility for decisions concerning West's health care. (Id.) Finally, the complaint, named the Department of Corrections as a defendant, and listed other "generic" John Doe defendants. (Id.)

The amended complaint then recited that West suffered from chronic progressive conditions, rheumatoid arthritis and anxiety, which were allegedly neglected and not treated for a span of months and years. (Id.) Thus, while West's amended complaint described some level of medical care provided to this inmate, and specifically acknowledged that West underwent surgery in 2008 and 2011, (id., ¶¶41 and 50), fairly construed it asserted deliberate indifference to the plaintiff's medical needs through an unreasonable delay in providing this treatment. (Id.)

Having made these factual averments, the amended complaint then advanced six legal claims: an Eighth Amendment, medical deliberate indifference claim lodged pursuant to 42 U.S.C. §1983; a "failure to train, supervise and regulate staff" claim;

a malpractice claim; a discrimination claim under the Americans With Disabilities, Act, (ADA) 42 U.S.C. §12101; and two pendent state claims of negligent and intentional infliction of emotional distress. (Id.)

The defendants have now moved to dismiss all of the claims set forth in this amended complaint. (Doc. 56.) In response to this motion, West has filed a pleading which actually adds some confusion to what his claims are in this litigation, since West seems to assert only constitutional and statutory claims under the ADA, and appears to deny making a malpractice claim despite the inclusion of such a claim in his amended complaint. (Doc. 63.)

Upon consideration of the parties' respective positions, it is recommended that the motion to dismiss be granted, in part, and denied, in part. Specifically, it is recommended that the malpractice, ADA and pendent state tort claims be dismissed in their entirety, and that the Eighth Amendment claim be dismissed as to Superintendent Varano and the Department of Corrections. At this stage, however, where our review is confined to an assessment of the pleadings, it is recommended that the motion to dismiss be denied with respect to West's Eighth Amendment claims against the medical defendants, defendants Ellers and McCarty.

## II. Discussion

### A. Motion to Dismiss-Standard of Review

The defendant has moved to dismiss this amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (12007) continuing with our opinion in <u>Phillips</u> [<u>v. County of Allegheny</u>, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in <u>Ashcroft v. Iqbal</u> –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. <u>Jordan v. Fox Rothschild, O'Brien & Frankel,</u>

4

Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. Rather, in conducting a

review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Iqbal, 129 S.Ct. at 1947. Second, the court should identify

allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950. Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

Judged against these benchmarks, for the reasons set forth below, a number of West's claims fail as a matter of law.

## B.    West May Not Maintain a Malpractice Claim

At the outset, it is clear that West may not maintain a malpractice claim under Pennsylvania law because he has not complied with the requirements set by state law for such a claim. In order to present a *prima facie* case of medical malpractice under Pennsylvania law, "as a general rule, a plaintiff has the burden of presenting expert opinions that the alleged act or omission of the defendant physician or hospital personnel fell below the appropriate standard of care in the community, and that the negligent conduct caused the injuries for which recovery is sought." Simpson v. Bureau of Prisons, No. 02-2213, 2005 WL 2387631, at *5 (M.D.Pa. Sept. 28, 2005) This requirement is imposed upon malpractice plaintiffs like West by Pennsylvania Rule of Civil Procedure 1042.3, which requires the filing a valid certificate of merit along with this malpractice claim or medical negligence claim.

Pa.R.C.P. No. 1042.3 ("Rule 1042.3") provides in pertinent part:

Rule 1042.3. Certificate of Merit

(a) In any action based upon an allegation that a licensed professionals deviated from an acceptable professional standard, the attorney for the plaintiff, or the plaintiff if not represented, shall file with the complaint or within sixty days after the filing of the complaint, a certificate of merit signed by the attorney or party that either

(1) an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm, or

(2) the claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard, or

(3) expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.

The requirements of Rule 1042.3 are deemed substantive in nature and, therefore, federal courts in Pennsylvania will apply these prerequisites of Pennsylvania law when assessing the merits of a medical malpractice claim. Liggon-Reading v. Estate of Sugarman, 659 F.3d 258 (3d Cir. 2011); Iwanejko v. Cohen & Grigsby, P.C., 249 Fed.Appx. 938, 944 (3d Cir.2007); Ramos v. Quien, 631 F. Supp. 2d 601, 611 (E.D. Pa. 2008); Stroud v. Abington Memorial Hosp., 546 F.Supp.2d 238, 248 (E.D.Pa.2008) (noting that Pennsylvania federal courts "have uniformly held that the COM requirement is a substantive rule of law that applies in professional

liability actions proceeding in federal court"). Thus, to the extent that West wishes to bring a medical malpractice action, a failure to comply with Rule 1042.3 is a bar to this claim. In this regard, the controlling legal standards can be simply stated:

> Under Pennsylvania law, "[a] certificate of merit must be filed either with the complaint or within sixty days after the filing of the complaint in any action asserting a professional liability claim 'based upon the allegation that a licensed professional deviated from an acceptable professional standard." ' Smith v. Friends Hospital, 928 A.2d 1072, 1074-75 (Pa.Super.Ct.2007) (quoting PA. R. CIV. P. 1042.3). Federal courts have found that this rule constitutes state substantive law and thus applies in federal courts in Pennsylvania pursuant to Erie R.R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). See Scaramuzza v. Sciolla, 345 F.Supp.2d 508, 510 (E.D.Pa.2005) (citing Chamberlain v. Giampap, 210 F.3d 154, 158-61 (3d Cir.2000), which held that an analogous New Jersey statute was substantive law); Velazquez v. UPMC Bedford Mem'l Hosp.., 328 F.Supp.2d 549 (W.D.Pa.2004). Courts may dismiss cases when a plaintiff fails to file a required certificate of merit. See, e.g., Stroud v. Abington Mem. Hosp., 546 F.Supp.2d 238, (E.D.Pa.2008); Bresnahan v. Schenker, 498 F.Supp.2d 758, 762 (E.D.Pa.2007); McElwee Group, LLC v. Mun. Auth. of Elverson, 476 F.Supp.2d 472, 475 (E.D.Pa.2007) (holding that "failure to submit the certificate is a possible ground for dismissal by the district court, when properly presented to the court in a motion to dismiss).

Brownstein v. Gieda, No. 08-1634, 2009 WL 2513778, *3 (M.D.Pa. Aug. 13, 2009).

This requirement of state law applies with equal force to counseled complaints, and to *pro se* medical malpractice actions brought under state law. See Hodge v. Dept. of Justice, 372 Fed. App'x 264, 267 (3d Cir. 2010) (affirming district court's dismissal of medical negligence claim for failure to file COM); Iwanejko v. Cohen & Grigsby, P.C., 249 F. App'x 938, 944 (3d Cir. 2007); Levi v. Lappin, No. 07-1839,

2009 WL 1770146 (M.D. Pa. June 22, 2009). Moreover, a certificate of merit must affirmatively demonstrate "either that (1) an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm, or ... (3) expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim." Bresnahan v. Schenker, 498 F. Supp. 2d 758, 761-62 (E.D. Pa. 2007). Therefore, where a purported certificate of merit merely recites that the plaintiff possesses knowledge of his case, that filing does not comply with Rule 1042.3, and the plaintiff's malpractice claim may be subject to dismissal. Id. Similarly, a plaintiff may not satisfy Rule 1042.3 by merely acknowledging the requirement of the rule and promising to comply at some future time. Donnelly v. O'Malley & Langan, P.C., 3:CV-08-1945, 2009 WL 3241662 (M.D. Pa. Oct. 2, 2009) aff'd as modified sub nom. Donnelly v. O'Malley & Langan, PC, 370 F. App'x 347 (3d Cir. 2010). Furthermore, a pleading which simply parrots the language of Rule 1042.3 without any further substantive content is inadequate, and cannot save a malpractice claim from dismissal. Rodriguez v. Smith, CIV.A.03-3675, 2005 WL 1484591 (E.D. Pa. June 21, 2005)(dismissal without prejudice where plaintiff files certificate that parrots Rule

1042.3 and concedes in the certificate that a licensed professional has not yet supplied the written statement required under Rule 1042.3(a)(1)).

Given the substantive nature of this requirement under Pennsylvania law, its clear application to medical malpractice claims, and West's current failure to comply with the rule, it is recommended that this medical malpractice claim be dismissed. Although the plaintiff's failure to comply with Rule 1042.3 requires dismissal of this malpractice claim, we note that the sanction imposed under state law for a violation of this rule, entry of a non pros by the prothonotary, has no precise analogue in the federal system. Thus, courts have held in this context that "[u]nlike dismissal with prejudice, the entry of non pros is a default judgment that does not bar the plaintiff from commencing another suit based upon the same cause of action." Bresnahan v. Schenker, 498 F.Supp.2d 758, 762 (E.D. Pa. 2007)(quoting, Scaramuzza v. Sciolla, 345 F.Supp.2d 508, 511 (E.D. Pa. 2004). Moreover, under Pennsylvania law, a party can seek relief from a non pros dismissing a case under Rule 1042.3, by coming into compliance with the rule, showing that there is a meritorious malpractice cause of action, and providing a reasonable explanation or legitimate excuse for then earlier non-compliance. See Womer v. Hilliker, 208 A.2d 269 (2006), see also Pa.R.C.P. No. 3051. Therefore, "[w]hen a plaintiff has failed to submit a certificate or merit or otherwise indicated that he has retained an expert witness, it is appropriate for a federal district court to dismiss his professional malpractice claim without prejudice.

See Lopez v. Brady, Civil No. 4:CV-07-1126, 2008 WL 4415585, at *14 (M.D.Pa. Sept.25, 2008) (dismissing FTCA medical malpractice claim without prejudice); Henderson v. Pollack, Civil No. 1:CV-07-1365, 2008 WL 282372, at *5 (M.D.Pa. Jan.31, 2008) (dismissing state law medical malpractice claim); Hartman v. Low Sec. Correctional Ins. Allenwood, No. 4:CV-04-0209, 2005 WL 1259950, at *5 (M.D.Pa. May 27, 2005) (same)." Donnelly v. O'Malley & Langan, P.C., 3:CV-08-1945, 2009 WL 3241662 (M.D. Pa. Oct. 2, 2009) aff'd as modified sub nom. Donnelly v. O'Malley & Langan, PC, 370 F. App'x 347 (3d Cir. 2010). Thus, West may still have recourse to the state courts on this state law claim, if he can file a proper certificate of merit and "demonstrate a reasonable explanation or legitimate excuse for untimely filing." Ramos v. Quien, 631 F. Supp. 2d 601, 612 (E.D. Pa. 2008). However, until West takes these steps, and complies with Rule 1042.3, we should dismiss this state tort medical malpractice claim.

## C.    West's Americans With Disabilities Act Claim Also Fails

In his amended complaint, West also seeks to bring a claim under the Americans With Disabilities, Act, (ADA) 42 U.S.C. §12101. West's ADA claim, however, sounds in medical malpractice rather than discrimination, with West simply alleging that prison officials failed to provide him with necessary and adequate care for his arthritis and a related anxiety disorder. (Doc. 54, ¶¶101-107.)

Such averments are inadequate to state a claim under the ADA in this prison medical setting. Indeed, it is well-settled that "the [ADA] would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners ... [t]he ADA does not create a remedy for medical malpractice." Iseley v. Beard, 200 F. App'x 137, 142 (3d Cir. 2006) quoting Bryant v. Madigan, 84 F.3d 246, 248 (7th Cir.1996). Therefore, when an inmate " does not claim that he was excluded from any program on the basis of his disability, [but] [r]ather he claims that he was denied medical treatment for his disabilities, [his claim] is not encompassed by the ADA's prohibitions" and should be dismissed. Id. As the United States Court of Appeals has recently observed in affirming the dismissal of a similar ADA claim brought by a state prisoner and grounded on allegations of medical malpractice: "To establish a violation of Title II of the ADA, an inmate must allege that: (1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities, and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability. See 42 U.S.C. § 12132. P[laintiff]'s complaint asserted that defendants violated the ADA and failed to allege any facts that demonstrated that the alleged inadequate or improper medical care he received was *because of* a disability. Consequently, dismissal of this claim was appropriate." Pierce v. Pitkins, 12-4083, 2013 WL 1397800 (3d Cir. Apr. 8, 2013). See, e.g., Brown v. Deparlos, 492 F. App'x 211, 215

(3d Cir. 2012)(same); <u>Brown v. Pennsylvania Dep't of Corr.</u>, 290 F. App'x 463, 467 (3d Cir. 2008).

These principles apply here and are fatal to this particular ADA claim. Since, fairly construed, West's amended complaint does not allege discrimination because of a disability, but simply asserts a failure to adequately treat a disabling condition, it fails to state a claim under the ADA, and West's ADA claim should be dismissed.

### D. <u>West's Remaining Claims Against the Commonwealth of Pennsylvania Department of Corrections Also Fail</u>

West's amended complaint also appears to assert constitutional and common law tort claims against a state agency, the Commonwealth of Pennsylvania, Department of Corrections. In particular, in this amended complaint West seems to bring Eighth Amendment claims against the Department of Corrections, and common law torts of intentional and negligent infliction of emotional distress against this state agency as well.

This he cannot do. Rather, this amended complaint runs afoul of basic constitutional and statutory rules limiting lawsuits against state agencies and officials. First, as a matter of constitutional law, the Eleventh Amendment to the Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the . . . States . . . .", U. S. Const. Amend XI. By its terms, the Eleventh Amendment strictly limits the power of federal courts to entertain cases brought by citizens against the

state and state agencies. Moreover, a suit brought against an individual acting in his or her official capacity constitutes a suit against the state and, therefore, also is barred by the Eleventh Amendment. Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989).

Pursuant to the Eleventh Amendment, states, state agencies and state officials who are sued in their official capacity are generally immune from lawsuits in federal courts brought against them by citizens. Seminole Tribe v. Florida, 517 U.S. 44, 54 (1996). This proscription directly applies here. "Because the Commonwealth of Pennsylvania's Department of Corrections is a part of the executive department of the Commonwealth, see Pa.Stat.Ann., tit. 71, § 61, it shares in the Commonwealth's Eleventh Amendment immunity. Such immunity, . . . , may be lost in [only] one of two ways: (1) if the Commonwealth waived its immunity; or (2) if Congress abrogated the States' immunity pursuant to a valid exercise of its power. See College Sav. Bank, 527 U.S. at 670, 119 S.Ct. 2219; Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 240-41, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985)." Lavia v. Pennsylvania, Dept. of Corr., 224 F.3d 190, 195 (3d Cir. 2000)

Under the Eleventh Amendment, the Commonwealth's immunity exists as a matter of law unless waived by the state, or expressly and unequivocally abrogated by Congress. In this case, it is clear that Congress has not expressly abrogated this constitutional immunity with respect to federal civil rights lawsuits against the

Commonwealth of Pennsylvania Department of Corrections, and the Commonwealth clearly has not waived its immunity. See Lavia v. Pennsylvania, Dept. of Corr., 224 F.3d 190, 195 (3d Cir. 2000). Quite the contrary, the Commonwealth has specifically by statute invoked its Eleventh Amendment immunity in 42 Pa.C.S.A. §8521(b). Thus, while Pennsylvania has, by law, waived sovereign immunity in limited categories of cases brought against the Commonwealth in state court, See 42 Pa.C.S.A. §8522, Section 8521(b) flatly states that: "Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States." 42 Pa.C.S.A. §8521(b). Moreover, beyond these constitutional considerations, as a matter of statutory interpretation, the plaintiff cannot bring a damages action against the Commonwealth since it is also well-settled that a state, a state agency, or a state official acting in an official capacity is not a "person" within the meaning of 42 U.S.C. §1983, the principal federal civil rights statute. Will v. Michigan Dep't. of State Police, 491 U.S. 58, 71 (1989).

These basic legal tenets apply here and are fatal to West's claims against the Commonwealth. In sum, West's federal civil rights claims for damages against the Commonwealth of Pennsylvania Department of Corrections are barred both by the Eleventh Amendment to the United States Constitution and by cases construing the federal civil rights statute, 42 U.S.C. §1983. Therefore, since this state agency cannot

be sued in this fashion in federal court, these federal claims against the Department of Corrections should be dismissed.

West's state tort claims of intentional and negligent infliction of emotional distress also fail with respect to the Department of Corrections on sovereign immunity grounds. As one court has aptly held when disposing of a similar state tort claim: "[A] Commonwealth agency and its employee acting within the scope of his employment is protected by sovereign immunity from intentional torts. <u>Frazier v. Southeastern Pennsylvania Transp. Auth.</u>, 868 F.Supp. 757, 762 (E.D.Pa.1994). Further, none of these limited negligent categories where the Commonwealth has explicitly waived immunity is applicable to the plaintiff's claims for negligent infliction of emotional distress. 42 Pa.C.S. § 8522(b). As a result, [a state agency] is immune from liability for both intentional and negligent infliction of emotional distress claims." <u>Watkins v. PA Bd of Prob. & Parole</u>, 02CV2881, 2002 WL 32182088 (E.D. Pa. Nov. 25, 2002).

## E. <u>West Has Failed To State a Claim Against Defendant Varano</u>

Furthermore, West names Superintendent Varano as a defendant on his Eighth Amendment deliberate indifference claim, but his pleading contains absolutely no factual allegations relating to this defendant beyond his assertion that the defendant had oversight responsibilities for the operation of the prison. In considering claims brought against supervisory prison officials arising out of alleged constitutional

violations, the courts recognize that supervisors may be exposed to liability only in certain, narrowly defined, circumstances.

Thus, it is clear that a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendant was a prison supervisor when the incidents set forth in the complaint occurred. Quite the contrary, to state a constitutional tort claim the plaintiff must show that the supervisory defendants actively deprived him of a right secured by the Constitution. Morse v. Lower Merion School Dist., 132 F.3d 902 (3d Cir. 1997); see also Maine v.Thiboutot, 448 U.S. 1 (1980). Constitutional tort liability is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or of actual knowledge and acquiescence in the challenged practice. Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997).

In particular, with respect to prison supervisors it is well-established that:

"A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988).

Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).

As the Supreme Court has observed:

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. . . . See Monell v. New York City Dept. of Social Servs., 436 U.S. 658,

18

691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); see also Dunlop v. Munroe, 7 Cranch 242, 269, 3 L.Ed. 329 (1812) (a federal official's liability "will only result from his own neglect in not properly superintending the discharge" of his subordinates' duties); Robertson v. Sichel, 127 U.S. 507, 515-516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties"). Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.

Ashcroft v. Iqbal, 129 S.Ct. 1937, 1948 (2009).

Applying these benchmarks, courts have frequently held that, in the absence of evidence of supervisory knowledge and approval of subordinates' actions, a plaintiff may not maintain an action against supervisors based upon the misdeeds of their subordinates. O'Connell v. Sobina, No. 06-238, 2008 WL 144199, * 21 (W.D. Pa. Jan. 11, 2008); Neuburger v. Thompson, 305 F. Supp. 2d 521, 535 (W. D. Pa. 2004). Rather, "[p]ersonal involvement must be alleged *and is only present where the supervisor directed the actions of supervisees or actually knew of the actions and acquiesced in them*. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988)." Jetter v. Beard, 183 F.Appx. 178, 181 (3d Cir. 2006)(emphasis added).

Here, West does not allege that defendant Varano directed the conduct complained of by the plaintiff, or had knowledge of that conduct and acquiesced in it. Rather, in the first instance West simply alleges the superintendent was legally

responsible for the overall operation of the prison. To the extent that West premises liability of this particular defendant upon the assertion that he was legally responsible for the overall operation of the institution, without setting forth any further factual basis for a claim against him in the body of this pleading, this cursory style of pleading is plainly inadequate to state a claim against a prison supervisor and compels dismissal of this defendant. Hudson v. City of McKeesport, 241 F. App'x 519 (3d Cir. 2007)(affirming dismissal of defendant who was only named in caption of case.)

Nor can West sustain Eighth Amendment claims against a non-medical prison supervisor based solely upon assertions that this official failed to intervene with prison medical staff on medical matters. In a case such as this, it is well-established that non-medical correctional supervisors may not be "considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." Durmer v. O'Carroll, 991 F.2d 64, 69 (3d. Cir. 1993). The rationale for this rule has been aptly explained by the United States Court of Appeals for the Third Circuit in the following terms:

> If a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor. Moreover, under such a regime, non-

medical officials could even have a perverse incentive *not* to delegate treatment responsibility to the very physicians most likely to be able to help prisoners, for fear of vicarious liability. Accordingly, we conclude that, absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference

Spruill v. Gillis, 372 F.3d 218, 236 (3d. Cir. 2004).

Applying this standard, courts have repeatedly held that, absent some reason to believe that prison medical staff are mistreating prisoners, non-medical corrections staff who refer inmate medical complaints to physicians may not be held personally liable for medically-based Eighth Amendment claims. See, e.g., Johnson v. Doughty, 433 F.3d 1001 (7th Cir. 2006); Spruill v. Gillis, supra; Durmer v. O'Connor, supra; Garvey v. Martinez, No. 08-2217, 2010 WL 569852 (M.D. Pa. Feb. 11, 2010); Hodge v. United States. No. 06-1622, 2007 WL 2571938 (M.D. Pa. Aug. 31, 2007).

Since West's complaint affirmatively asserts that medical professionals, defendants Ellers and McCarty, were directly responsible for health care decisions relating to this inmate, it follows that defendant Varano, a non-medical correctional supervisor, cannot be held personally liable for the choices and decisions made by these medical experts in an area beyond this expertise. Therefore, this defendant should also be dismissed.

**F.**     **The Motion to Dismiss Should be Denied With Respect to the Eighth Amendment Claims Leveled Against the Medical Supervisory Defendants, Defendant Eller and McCarty**

Finally in his complaint West levels Eighth Amendment deliberate indifference claims against two medical supervisors, Richard Ellers, the Director of Health Care Service, and Katharine McCarty, the Corrections Health Care Administrator for the Department of Corrections, as defendants. As to these defendants, West's amended complaint asserted, with some greater specificity, that the defendants had direct and immediate responsibility for decisions regarding West's health care, and made choices which led to neglect of his medical conditions for months and years.

West faces an exacting burden in advancing this Eighth Amendment claim against prison officials in their individual capacities. To sustain such a claim, West must plead facts which:

> [M]eet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quotation marks and citations omitted). In prison conditions cases, "that state of mind is one of 'deliberate indifference' to inmate health or safety." Id. "Deliberate indifference" is a subjective standard under Farmer-the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety.

Beers-Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001).

By including a subjective intent component in this Eighth Amendment benchmark, the courts have held that a mere generalized knowledge that prisons are dangerous

places does not give rise to an Eighth Amendment claim.  See Jones v. Beard, 145 F. App'x 743 (3d Cir. 2005)(finding no Eighth Amendment violation where inmate-plaintiff complained about cellmate who had a history of psychological problems, but where plaintiff failed to articulate a specific threat of harm during the weeks prior to an attack.)  In short, when "analyzing deliberate indifference, a court must determine whether the prison official 'acted or failed to act despite his knowledge of a substantial risk of serious harm.'  Farmer v. Brennan, 511 U.S. 825, 841 (1994).  A prisoner plaintiff must prove that the prison official 'knows of and disregards an excessive risk to inmate health or safety.'  Id . at 837."  Garvey v. Martinez, 08-2217, 2010 WL 569852, at *6 (M.D.Pa. Feb. 11, 2010).

These principles apply with particular force to Eighth Amendment claims premised upon inadequate medical care.  In the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to an inmate's serious medical needs.  Estelle v. Gamble, 429 U.S. 97, 105 (1976).  To establish a violation of his constitutional right to adequate medical care in accordance with this standard, West is required to allege facts that demonstrates (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need.  Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

Deliberate indifference to a serious medical need involves the "unnecessary

and wanton inflction of pain." <u>Estelle</u>, 429 U.S. at 104. Such indifference may be evidenced by an intentional refusal to provide care, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, denial of reasonable requests for treatment that results in suffering or risk of injury, <u>Durmer v. O'Carroll</u>, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury," <u>White v. Napoleon</u>, 897 F.2d 103, 109 (3d Cir. 1990).

However, it is also clear that the mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as an Eighth Amendment claim because medical malpractice standing alone is not a constitutional violation. <u>Estelle</u>, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." <u>Durmer</u>, 991 F.2d at 67 (citations omitted). Furthermore, in a prison medical context, deliberate indifference is generally not found when some significant level of medical care has been offered to the inmate. <u>Clark v. Doe</u>, 2000 U.S. Dist. LEXIS 14999, 2000 WL 1522855, at *2 (E.D.Pa. Oct. 13, 2000)("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care"). Thus, such complaints fail as constitutional claims under § 1983 since "the exercise by a doctor of his professional judgment is never deliberate indifference. <u>See e.g. Brown v. Borough of Chambersburg</u>, 903 F.2d 274, 278 (3d Cir.1990) ('[A]s long as a

physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.')". <u>Gindraw v. Dendler</u>, 967 F.Supp. 833, 836 (E.D. Pa. 1997).

Applying this exacting standard, courts have frequently rejected Eighth Amendment claims that are based upon the level of professional care that an inmate received; <u>see, e.g.</u>, <u>Ham v. Greer</u>, 269 F. App'x 149 (3d Cir. 2008); <u>James v. Dep't of Corrections</u>, 230 F. App'x 195 (3d. Cir. 2007); <u>Gillespie v. Hogan</u>, 182 F. App'x 103 (3d Cir. 2006); <u>Bronson v. White</u>, No. 05-2150, 2007 WL 3033865 (M.D. Pa. Oct. 15, 2007); <u>Gindraw v. Dendler</u>, 967 F.Supp. 833 (E.D. Pa. 1997), particularly where it can be shown that significant medical services were provided to the inmate but the prisoner is dissatisfied with the outcome of these services. Instead, courts have defined the precise burden which an inmate must sustain in order to advance an Eighth Amendment claim against a healthcare professional premised on allegedly inadequate care, stating that:

> The district court [may] properly dis[miss an] Eighth Amendment claim, as it concerned [a care giver], because [the] allegations merely amounted to a disagreement over the proper course of his treatment and thus failed to allege a reckless disregard with respect to his . . . care. The standard for cruel and unusual punishment under the Eighth Amendment, established by the Supreme Court in <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976), and its progeny, has two prongs: 1) deliberate indifference by prison officials and 2) serious medical needs. "It is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.' " "Nor does mere disagreement as to the proper medical treatment support a claim of an eighth amendment violation." . . . . [The inmate] alleged no undue delay in receiving treatment and, as the district court noted, the

> evidence he presented established that he received timely care . . . .
> Although [an inmate plaintiff] may have preferred a different course of
> treatment, [t]his preference alone cannot establish deliberate
> indifference as such second-guessing is not the province of the courts.

James, 230 F.App'x. at 197-198.(citations omitted).

Furthermore, it is well-settled that an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim. Therefore, where a dispute in essence entails nothing more than a disagreement between an inmate and doctors over alternate treatment plans, the inmate's complaint will fail as a constitutional claim under § 1983; see e.g., Gause v. Diguglielmo, 339 F.App'x 132 (3d Cir. 2009)(dispute over choice of medication does not rise to the level of an Eighth Amendment violation); Innis v. Wilson, 334 F.App'x 454 (3d Cir. 2009)(same); Rozzelle v. Rossi, 307 F.App'x 640 (3d Cir. 2008)(same); Whooten v. Bussanich, 248 F.App'x 324 (3d Cir. 2007)(same); Ascenzi v. Diaz, 247 F.App'x 390 (3d Cir. 2007)(same), since "the exercise by a doctor of his professional judgment is never deliberate indifference." Gindraw v. Dendler, 967 F.Supp. 833, 836 (E.D. Pa. 1997)(citations omitted). In short, in the context of the Eighth Amendment, any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional medical judgment. Inmates

of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (quoting Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977)).

While this is an exacting legal standard, resolution of such claims typically involves consideration of matters outside the pleadings. Therefore, such claims frequently are not amenable to resolution on a motion to dismiss but must await consideration on a summary judgment motion, where undisputed facts beyond the pleadings may also be examined. These controlling legal principles guide the resolution of this particular motion to dismiss. In this motion, the medical defendants accept as true all of the well-pleaded allegations in West's complaint, but argue that those allegations–even when construed in favor of West–do not reach the level of an Eighth Amendment violation. At this stage, where we are limited to an assessment of the pleadings themselves, we must recommend that this motion to dismiss be denied because we find that these factual recitals are sufficient to state a viable Eighth Amendment claim against these defendants. Fairly construed, the amended complaint alleges failures to appropriately treat or respond to a known, and serious, medical condition by the defendants over a number of years. The amended complaint also alleges that this failure to treat has resulted in a measurable, and significant, decline in West's health, thus addressing the issue of causation between the alleged constitutional infraction and some injury to the plaintiff. Therefore, on the face of the pleadings, West has alleged sufficient well-pleaded facts to proceed with this

litigation with respect to defendants Ellers and McCarty, who he alleges were directly involved in his health care decisions, and the motion to dismiss these particular defendants should be denied. See, Henry v. Wilson, No. 06-1439, 131164 (W.D. Pa. Jan. 9, 2008) (denying Rule 12(b)(6) motion relating to Eighth Amendment deliberate indifference claim); Thomas v. Arias, No. 06-291, 2007 WL 210097 (E.D. Pa. Jan. 23, 2007)(same).

In reaching this conclusion we are mindful of the fact that, in a prison medical context, deliberate indifference is generally not found when some significant level of medical care has been offered to the inmate; Clark v. Doe, 2000 U.S. Dist. LEXIS 14999, 2000 WL 1522855, at *2 (E.D.Pa. Oct. 13, 2000)("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care"), and that medically-based Eighth Amendment claims typically fail when an inmate has received on-going care since "the exercise by a doctor of his professional judgment is never deliberate indifference. See e.g., Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir.1990) ('[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.')". Gindraw v. Dendler, 967 F.Supp. 833, 836 (E.D. Pa. 1997). We also recognize that West's pleadings suggest that he has received some treatment from the defendants while in prison. However, at this stage of these proceedings, an assessment of the nature, extent and quality of that care is not possible. Rather, this

assessment would entail a consideration of facts beyond the pleadings, something which can only be done in a properly documented motion for summary judgment, and must await another day. Accordingly, for these reasons, it is recommended that the motion to dismiss be denied with respect to defendants Ellers and McCarty.[1]

## III.   Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the defendant's Motion to Dismiss (Doc. 56.) be GRANTED, in part, and denied in part, as follows:

1.      All medical malpractice claims should be dismissed.

2.      All claims under the Americans with Disabilities Act should be dismissed.

3.      All claims against the Commonwealth of Pennsylvania, Department of Corrections should be dismissed.

---

[1]We would recommend, however, that West's state tort claims of negligent or intentional infliction of emotional distress against these particular defendants be dismissed at this time on sovereign immunity grounds since West's amended complaint expressly asserts that the defendants were acting in the scope of their employment at the time of the events set forth in the amended complaint, (Doc. 54, ¶15.), and the bar of sovereign immunity applies to claims of intentional or negligent infliction of emotional distress leveled against Commonwealth employees who are acting within the scope of their official duties. Rodriguez v. Smmith, CIV.A.03-3675, 2005 WL 1484591 (E.D. Pa. June 21, 2005)

4.   All claims of intentional or negligent infliction of emotional distress should be dismissed.

5.   All Eighth Amendment deliberate indifference claims against defendant Varano should be dismissed.

The Motion to Dismiss should be DENIED, however, with respect to Eighth Amendment deliberate indifference claims against individual medical defendants, defendants Ellers and McCarty, but this denial should be without prejudice to the submission of a properly documented summary judgment motion.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 1st day of August 2013.

S/Martin C. Carlson
Martin C. Carlson
United States Magistrate Judge