IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LARRY WEST,                          :
          Plaintiff,          :
                            :      1:10-cv-2637
      v.                       :
                            :      Hon. John E. Jones III
DAVID VARANO, *et al.*,              :
          Defendants.         :

## MEMORANDUM

April 30, 2015

## I.   BACKGROUND

Plaintiff Larry West ("West"), a Pennsylvania state inmate currently incarcerated at the State Correctional Institution at Coal Township ("SCI-Coal Township"), commenced this civil rights action on December 27, 2010.  (Doc. 1). The complaint was amended on August 31, 2012.  (Doc. 54).  Remaining for disposition is West's claim that Defendants Richard Ellers ("Ellers") and Kathryn McCarty ("McCarty") were deliberately indifferent to his Eighth Amendment right to adequate medical treatment for rheumatoid arthritis.  (Doc. 66 ).  Specifically, he alleges that Defendant Ellers "is believed to have had immediate and direct managerial responsibility for the delivery of medical care due to the Plaintiff and to have been responsible for its accomplishment."  (*Id.* at ¶ 6).  He avers that Defendant McCarty "is believed to have had the direct responsibility for the actual

administration and delivery of medical care due to the Plaintiff and to have been responsible for seeing to the implementation of recommendations and directions of outside health care practitioners and experts engaged to evaluate and treat the Plaintiff." (*Id.* at ¶ 9).

Presently pending is a motion (Doc. 85) for summary judgment pursuant to Federal Rule of Civil Procedure 56 filed on behalf Ellers and McCarty. West, who is represented by counsel, has failed to oppose the motion. For the reasons set forth below, the motion for summary judgment will be deemed unopposed and granted.

## II.    STANDARD OF REVIEW

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *Brown v. Grabowski*, 922 F.2d 1097, 1111 (3d Cir. 1990).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Id.*; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996). Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. FED. R. CIV. P. 56; *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *Wooler v. Citizens Bank*, 274 F. A'ppx. 177, 179 (3d Cir. 2008). The party opposing the motion must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because

"a complete failure of proof concerning an essential element of the nonmoving

party's case necessarily renders all other facts immaterial." *Id.* at 323; *see also*

*Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992). "[T]he non-moving

party 'may not rely merely on allegations or denials in its own pleadings; rather, its

response must . . . set out specific facts showing a genuine issue for trial.'" *Picozzi*

*v. Haulderman*, 2011 WL 830331, *2 (M.D. Pa. 2011) (quoting FED. R. CIV. P.

56(e)(2)). "Inferences should be drawn in the light most favorable to the

non-moving party, and where the non-moving party's evidence contradicts the

movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v.*

*BMW of North America. Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

## III.    STATEMENT OF MATERIAL FACTS

"A motion for summary judgment filed pursuant to FED. R. CIV. P. 56 shall

be accompanied by a separate, short and concise statement of the material facts . . .

as to which the moving party contends there is no genuine issue to be tried." *See*

L.R. 56.1.  The opposing party shall file a separate statement of the material facts

as to which it is contended that there exists a genuine issue to be tried. *Id.*  "All

material facts set forth in the statement required to be served by the moving party

will be deemed to be admitted unless controverted by the statement required to be

served by the opposing party." *Id.*  Because West failed to oppose defendants'

statement of material facts, all facts contained therein are deemed admitted.

At all times material to the complaint, West was incarcerated at SCI-Coal Township.  (Doc. 91, ¶ 1).  Defendant Ellers was the Director of the Bureau of Health Care Services for the Pennsylvania Department of Corrections ("DOC").  Defendant McCarty was the Corrections Health Care Administrator ("CHCA") at SCI-Coal Township.  (*Id.* at ¶ 3).  Ellers is not a physician and did not provide medical treatment or make decisions regarding the medical treatment of West.  (*Id.* at ¶¶ 5, 6).  His job duties included planning, directing and monitoring the medical, mental health and food services in all DOC correctional institutions.  (*Id.* at ¶ 7).

Defendant McCarty is not a physician and did not provide medical treatment to West or make decisions concerning his medical care.  (*Id.* at ¶ 10).  As an administrator for the DOC, McCarty's duties included, *inter alia*, planning, organizing, directing, and managing health care programs at SCI-Coal Township, coordinating medical staff and medical vendors; monitoring contracted inpatient and outpatient services at community hospitals, inpatient mental health units, and other services provided by private medical practitioners, and responding to inmate medical grievances and conflicts.  (*Id.* at ¶¶ 8, 14).  McCarty had no authority regarding the course of inmate medical treatment or surgery and took no part in scheduling inmate treatment appointments, consultation or surgery with outside

medical providers.  (*Id.* at ¶¶ 12, 13).

Throughout his incarceration at SCI-Coal Township, West was continuously under the care and treatment of a DOC contracted physician, as well as numerous private physicians outside of the DOC.  (*Id.* at ¶ 21).  His treating physicians made all decisions concerning his medical treatment.  (*Id.* at ¶ 11).  Beginning on March 6, 2007, he was referred to rheumatology for an assessment and recommendation.  (*Id.* at ¶ 23).  On May 4, 2007, he was seen by Alberto Unzueta, Jr., M.D., a resident, and rheumatologist Androniki Bili, M.D. at Geisinger Medical Center ("Geisinger"), Danville, Pennsylvania.  (*Id.* at ¶ 24).  On June 1, 2007, Keith Girton, M.D., an orthopedist at Saint Catherine Medical Center, recommended a total hip replacement.  (*Id.* at ¶ 25).  On July 11, 2007, Dr. Stanish reviewed West's chart, including the consults with Dr. Girton and Dr. Bili, and decided to continue conservative treatment.  (*Id.* at ¶ 26).

During an October 15, 2007 appointment with Dr. Stanish, West was insisting on pain management or a new hip telling the doctor "I want something done now!"  (*Id.* at ¶ 27).  Stanish explained to West that a total hip replacement may not be in his best interests given his young age and the limited fifteen-year life expectancy of a new hip.  (*Id.*)

On February 28, 2008, West was seen by his rheumatologist, who requested

6

that he return in six months.  (*Id.* at ¶ 28).  However, following a June 10, 2008

orthopedic consult at Geisinger, he was scheduled for a right total hip replacement

on July 17, 2008.  (*Id.* at ¶ 29).  The surgery was postponed because the

consultation review and approval process could not be completed by that date.  (*Id.*

at ¶ 30).  Attempts to reschedule the surgery were unsuccessful due to Geisinger's

fully booked orthopedic surgical schedule.  (*Id.* at ¶ 31).

On September 19, 2008, Dr. Stanish cancelled West's appointment with

Geisinger and scheduled him for a consult with Dr. Girton at St. Catherine's

Hospital.  (*Id.* at ¶ 32).  On October 22, 2008, Dr. Girton determined that West was

a candidate for a right total hip replacement, and the surgery was ultimately

performed by Dr. Girton on December 23, 2008.  (*Id.* at ¶ 33).  West continued

treatment with DOC medical contractors as well as outside medical vendors after

his right hip replacement.  (*Id.* at ¶ 37).

Dr. Stanish felt his elbows may benefit from aggressive treatment. (*Id.* at ¶

27).  On October 19, 2010, West had an elbow consult *via* telemedicine with

Herbert L. Kunkle, Jr., M.D., who was hesitant to refer West for total elbow

arthroplasty.  (*Id.* at ¶ 38).  On October 13, 2011, West was taken for an outside

consultation with Thomas Hughes, M.D. who recommended arthroscopic

debridement.  (*Id.* at ¶ 39).  On November 4, 2011, West's elbow surgery was

7

conducted by Dr.Hughes at Allegheny General Hospital. (*Id.* at ¶ 40).

All decisions regarding West's right hip replacement and elbow surgeries, including whether they would occur, how they would occur, and when they were scheduled, were not within Ellers or  McCarty's control.  (*Id.* at  ¶¶ 34-36).

## IV.   DISCUSSION

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials.  *See* 42 U.S.C. § 1983.  The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

*Id.*; *see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002); *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996).  To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).

For the delay or denial of medical care to rise to a violation of the Eighth Amendment's prohibition against cruel and unusual punishment, a prisoner must

8

demonstrate "(1) that defendants were deliberately indifferent to [his] medical needs and (2) that those needs were serious." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).  Deliberate indifference requires proof that the official "knows of and disregards an excessive risk to inmate health or safety." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).   Deliberate indifference has been found where a prison official:  "(1) knows  of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a nonmedical reason; or (3) prevents a prisoner from receiving needed or recommended treatment." *Rouse*, 182 F.3d at 197.  Deference is given to prison medical authorities in the diagnosis and treatment of patients, and courts "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . (which) remains a question of sound professional judgment." *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (quoting *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)).  Allegations of negligent treatment or medical malpractice do not trigger constitutional protections.  *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976).

The Third Circuit, however, has held that, '[i]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in

9

believing that the prisoner is in capable hands.  This follows naturally from the

division of labor within a prison. . . .  Holding a non-medial prison official liable in

a case where a prisoner was under a physician's care would strain this division of

labor. . . .  [A]bsent a reason to believe (or actual knowledge) that prison doctors or

their assistants are mistreating (or not treating) a prisoner, a non-medical prison

official . . . will not be chargeable under the Eight Amendment scienter

requirement of deliberate indifference."   *Spruill v. Gillis*, 372 F.3d 218, 236 (3d

Cir. 2004) (discussing *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993)).  It is

undisputed that Defendants Ellers and McCarty are not physicians and there is no

doubt that West was under the care of a number of medical experts throughout his

the time period at issue.[1]  Defendants have met their burden of showing the

---

[1]Significantly, even if West established that Ellers and McCarty were personally involved in his medical care, he would still not be entitled to relief.  It is well-settled that no claim of deliberate indifference is made out where a significant level of care has been provided, as is the case here, and all that is shown is that the prisoner disagrees with the professional judgment of a physician, or that a different physician has, in the past, taken a different approach to the prisoner's treatment. *Estelle*, 429 U.S. at 105–06, 107 (finding that "in the medical context, . . . a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment"); *Parham v. Johnson*, 126 F.3d 454, 458 n. 7 (3d Cir. 1997) (recognizing "well-established law in this and virtually every circuit that actions characterizable as medical malpractice do not rise to the level of 'deliberate indifference' "); *Durmer*, 991 F.2d at 67 (same). *See also Taylor v. Norris*, 36 F. App'x. 228, 229 (8th Cir. 2002) (finding that deliberate indifference claim failed because it involved a disagreement over recommended treatment for hernias and decision not to schedule a doctor's appointment); *AbdulWadood v. Nathan*, 91 F.3d 1023, 1024–35 (7th Cir. 1996) (holding that an inmate's disagreement with selection of medicine and therapy for sickle cell anemia falls well short of demonstrating deliberate indifference); *Czajka v. Caspari*, 995 F.2d 870, 871 (8th Cir. 1993) (inmate's mere disagreement with doctor's informed decision to delay surgery does not establish Eighth Amendment claim).  "Certainly, no claim is presented when a doctor disagrees with the

absence of a genuine issue as to any material fact and West has wholly failed to

oppose defendants' motion.  *See Celotex*, 477 U.S. at 323. Accordingly,

Defendants are entitled to summary judgment.

## V.      CONCLUSION

For the foregoing reasons, the motion (Doc. 85) for summary judgment filed

on behalf of Defendants Ellers and McCarty will be deemed unopposed and

granted.

A separate order will enter.

---

professional judgment of another doctor.  There may, for example, be several ways to treat an
illness." *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990).  This is a clear case of a
disagreement with the course of medical treatment offered to West.